## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **BILLIE LAWLESS, et al.,** | **Case No.** |
| Plaintiffs, | **Judge** |
| v. | **VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| **CLEVELAND STATE UNIVERSITY, et al.,** | |
| Defendants. | |

Plaintiff Billie Lawless hereby moves under Fed.R.Civ.P. 65(b) for a temporary

restraining order, preliminary injunction, and other equitable relief prohibiting

Defendants' ongoing violations of federal law. Specifically,

1. Plaintiffs bring this action to stop Defendant Cleveland State University's
   unconstitutional and unlawful censorship of Plainitff's Sculpture, *The
   Politician: A Toy*.

2. Defendant is a public University that agreed to display Plaintiff's Sculpture
   on University property. Defendant has covered a portion of Plaintiff's
   Sculpture that features the textual element "BUILD A WALL OF PUSSIE," a
   dual reference—incorporated into the Sculpture along with several other
   references to well-known phrases uttered by U.S. politicians—to President
   Donald J. Trump's campaign promise to build a wall along the Southern
   border of the United States, as well as notorious use of misogynistic
   sexualized language, particularly his phrase "grab them by the pussy,"
   captured on *Access Hollywood* in 2005 as highly publicized in the 2016
   presidential campaign.[1]

3. Defendant's censorship continuously damages Plaintiff's reputation as an
   opponent of censorship in the visual arts, and misattributes the work to

---

[1] *See* Daniel Victor, *'Access Hollywood' Reminds Trump: 'The Tape Is Very Real,'* The New
York Times, Nov. 28, 2017, https://www.nytimes.com/2017/11/28/us/politics/donald-trump-tape.html.

Plaintiff (by signifying to the public that Plaintiff created the Sculpture as modified by Defendant).

4. As a result of the foregoing, Defendant is engaged in an ongoing violations of the First Amendment to the United States Constitution, Sections (a)(2) and (a)(3)(A) of the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A, and the parties' Contract.

5. Plaintiff therefore seeks a TRO:

   a. Temporarily restraining and enjoining Defendant from censoring Plaintiff's Sculpture;

   b. Requiring Defendant to show cause why this Court should not issue a preliminary injunction extending such temporary relief pending an adjudication on the merits.

   c. Providing for other equitable relief.

6. As required by Fed. R. Civ. P. 65(b), Plaintiff has provided actual notice to Defendant as of the time of making this application, and has provided copies of all pleadings and papers filed in this action to date. A certificate of counsel accompanies this motion.

A memorandum of support of this application and a proposed TRO will be filed concurrently with this motion. Plaintiff respectfully requests that this Court grant this motion by entering the proposed TRO.

/s/ Andrew C. Geronimo
Andrew C. Geronimo (OH #0086630)
Peter Pattakos (OH # 0082884)
THE PATTAKOS LAW FIRM LLC
101 Ghent Road
Fairlawn, OH 44333
Phone: 330.836.8533
Fax: 330.836.8536
ageronimo@pattakoslaw.com
peter@pattakoslaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

|  |  |
|---|---|
| **BILLIE LAWLESS, et al.,** | **Case No.** |
| Plaintiffs, | **Judge** |
| v. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OTHER EQUITABLE RELIEF** |
| **CLEVELAND STATE UNIVERSITY, et al.,** | |
| Defendants. | |

/s/ Andrew C. Geronimo
Andrew C. Geronimo (OH #0086630)
Peter Pattakos (OH # 0082884)
THE PATTAKOS LAW FIRM LLC
101 Ghent Road
Fairlawn, OH 44333
Phone: 330.836.8533
Fax: 330.836.8536
ageronimo@pattakoslaw.com
peter@pattakoslaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................ii

MEMORANDUM IN SUPPORT .............................................................................1

I.      **Factual Background**.........................................................................................1

    a.  Billie Lawless is an artist with a reputation for providing incisive political commentary and opposing censorship in the visual arts. ....................................1

    b.  *The Politician: A Toy* is a constantly evolving work with implicit and explicit political messages. ..........................................................................................2

    c.  CSU invites Lawless to display *The Politician: A Toy* on University property and agrees to terms restricting its control of the display...................................3

    d.  CSU's long history of permitting Mr. Lawless to continuously update and control the content of *The Politician: A Toy.*......................................................4

    e.  CSU censors *The Politician: A Toy* ...............................................................6

II.     **Law and Argument** .......................................................................................7

    a.  Standard for Preliminary Injunction................................................................7

    b.  Mr. Lawless has a strong likelihood of success on the merits of his claims...................8

         1. CSU's censorship is an intentional distortion of Mr. Lawless's Sculpture that damages his reputation and misattributes work he did not create to him in violation of 17 U.S.C. § 106A et seq. .......................................................8

         2.CSU's censorship of the reference to President Trump on *The Politician: A Toy* is viewpoint-based discrimination in violation of Mr. Lawless's First Amendment rights.................................................................................................9

             A. CSU has expressly and continuously opened its property to Mr. Lawless's protected political speech ................................................10

             B. *The Politician: A Toy* is core political speech. ...............................12

             C. Censorship of 'offensive' language is viewpoint-based discrimination ................................................................................13

         3. CSU's purported termination of the Contract is viewpoint-based discrimination in violation of Mr. Lawless's First Amendment Rights. ...............14

    c.  Plaintiff continues to suffer irreparable harm. .................................................16

    d.  An injunction would not cause substantial harm to Defendants. .................................17

    e.  The public interest supports an injunction. ......................................................18

III.    **Conclusion** ..................................................................................................18

DECLARATION OF COUNSEL................................................................................App. 1

CERTIFICATE OF SERVICE.....................................................................................App. 3

i

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*, 509 U.S. 544, 550 (1993)...............................................................10

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) ...........................................................10

*Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012) ................................................7

*Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 686 (1996)..................14

*Board of Ed., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 871–872 (1982)...........................................................................................................................................18

*Brown v. Entertainment Merchants Ass'n.*, 564 U.S. 786, 790 (2011) .....................................13

*Carter v. Helmsley–Spear, Inc.*, 852 F.Supp. 228, 232 (S.D.N.Y.1994) ..................................17

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007) ....................................................................................................................................7

*Connick v. Myers*, 461 U.S. 138, 143 (1983) ............................................................................15

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) ......................11

*Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 337–38 (6th Cir. 2010) ..................................15

*Freedman v. Maryland*, 380 U.S. 51 (1965) ..............................................................................10

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)........................................................................15

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir.2007) ..................................8

*Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) .............................................................................14

*McNeilly v. Land*, 684 F.3d 611, 620–21 (6th Cir.2012) ...........................................................17

*Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)...............................................15

Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983) .................11

*Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)..........................................................................................................................................14

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir. 2001) 10

*R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992).............................................................................14

*Stanley v. Georgia*, 394 U.S. 557 (1969) ..................................................................................18

*Street v. New York*, 394 U.S. 576, 592 (1969) ..........................................................................14

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 814–816 (2000)................14

**Statutes**

17 U.S.C. § 101 ..............................................................................................................................9

17 U.S.C. § 106A............................................................................................................................9

17 U.S.C. § 502.............................................................................................................................17

## MEMORANDUM IN SUPPORT

### I.     Factual Background

####    a.     Billie Lawless is an artist with a reputation for providing incisive political commentary and opposing censorship in the visual arts.

Plaintiff Billie Lawless is a renowned sculptor. He holds a Bachelors of Fine Arts from Rutgers University (1974) and Masters of Fine Arts from the State University of New York, Buffalo (1982). <u>Affidavit of Billie Lawless</u>, attached as <u>Exhibit A</u>. His works have appeared in galleries and in public spaces across the United States since the 1980s. Mr. Lawless is well-known for his controversial political works, and has spent much of his career combating censorship through the arts. <u>Id</u>., <u>Ex. 3</u>. According to Mr. Lawless, "Political commentary is the essential aspect of my work, and the foundation of each of my pieces." <u>Id</u>., ¶3.

In 1985, Mr. Lawless's Sculpture, *Green Lighting*, was ordered to be removed by then-Mayor of Buffalo, New York, James Griffin. Mr. Lawless obtained an injunction from the New York Supreme Court in order to prevent its destruction. <u>Id</u>., ¶¶7-8. Following the *Green Lightning* controversy, in 1987 Mr. Lawless came to Cleveland and SPACES Gallery for an exhibition entitled *Uncensored*, at which he exhibited his installation work *…I KNOW IT WHEN I SEE IT…$*, a complex, multimedia installation which utilized some of the images that Mayor Griffin found controversial, along with other references to art censorship. <u>Id</u>., ¶9. Later, Mr. Lawless sought injunctive relief from the Franklin County Court of Common Pleas when the City of Columbus cited him under their signage ordinances and covered one of his sculptures, *Didy Wah Didy*, a timed-sequence neon installation combining images of a mushroom cloud with text,

including "ATOMIC PLAYGROUND AHEAD" with a black tarp. Id., ¶¶10-11. Mr.

Lawless has always vigorously defended his works in the media, in the courts, or, most

drastically, by physically climbing atop *Green Lighting* when the Mayor of Buffalo

ordered that it be destroyed. Id.

**b.** ***The Politician: A Toy* is a constantly evolving work with implicit and explicit political messages.**

*The Politician: A Toy* is a forty-foot tall piece composed of ten tons of steel, two

tons of polypropelene rope armature, fiberglass, cedar, transmission, motor bearings,

and other electronics, surrounded by a forty-foot by fifty-foot wrought iron fence with

double entendres of political clichés, such as "READ MY HIPS," "AFFIRMATIVE

FRICTION," "CONTRADICTION IN AMERICA," and "LAW & BORDERS." Parts of

*The Politician: A Toy* are kinetic: the mouth and wheels are mechanized, and are

designed to turn eighteen hours per day with the help of a motor, transmission, and

various electrical and other engineering design processes. The electrical and mechanical

parts of *The Politician: A Toy* require regular service, refurbishment, replacement parts,

and other maintenance. Id. Along with the regular maintenance of the moving parts,

Mr. Lawless periodically updates the political messages on *The Politician: A Toy* with

words or phrases that comment on the political dialogue of the times. Id., ¶¶4, 13-15. In

his public statements about the Sculpture, Mr. Lawless affirmed that he would

continuously update it to tailor it to the politicians of the changing times:

> Lawless says his project isn't complete. **He plans to add more words to a surrounding fence**, which offers double entendres like "Affirmative Friction" as grillwork. Text to come includes "A Thousand Points of Slight" and "Family Shallows." The big red "kill" button doesn't work. Once it

does, **pushing it will activate sound bites by presidents,
past and present**, to accompany the perennially moving
mouth of the sculpture.

Robert L. Pincus, *Satirical sculpture won't stop traffic*, The Plain Dealer, July 26, 1996

(emphasis added); <u>Lawless Aff</u>. at <u>Exhibit 3</u>.

Mr. Lawless originally exhibited the Sculpture on private property near the

intersection of Chester Avenue and East 66th Street in Cleveland, from 1994 until 2008,

when it was moved to CSU. <u>Id</u>., ¶16. During that time, *The Politician: A Toy* attracted

controversy: there were numerous obstacles to displaying it near East 66th Street, and

during a City Planning Commission meeting, former Mayor Michael R. White said "I

have seen it and I don't like it." <u>Id</u>. In 2008, after 14 years of continuous exhibition on

Chester Avenue, CSU expressed interest in moving *The Politician: A Toy* to its campus.

> **c.     CSU invites Lawless to display *The Politician: A Toy* on University
> property and agrees to terms restricting its control of the display.**

On July 25, 2008, Mr. Lawless and A Politician: A Toy, Inc., entered into a written

contract with Defendant Cleveland State University (the "Contract"), under which CSU

paid Plaintiffs $120 per year to display *The Politician: A Toy* on CSU's campus at the

Southwest corner of East 18th Street and Chester Avenue. A true and accurate copy of

the agreement dated July 25, 2008 is attached to <u>Lawless Aff</u>. at <u>Exhibit 7</u>.

Mr. Lawless has always maintained physical ownership and control of *The

Politician: A Toy*, as well as control over its contents and message. In the Contract, the

parties agreed that Mr. Lawless would maintain ownership of the Sculpture over the

life of the Contract. <u>Contract</u>, ¶30 ("title to the Sculpture shall at all times remain with

the Artist…"). CSU agreed, "CSU shall have no right or power to modify, disassemble

or demolish the Sculpture, or to materially alter the area including within the fence surrounding the Sculpture without the prior written consent of the artist." Id., ¶15. As set forth in the Contract, CSU agreed to reimburse Mr. Lawless for ongoing maintenance and repair of the sculpture. Id., ¶10. The Contract requires Mr. Lawless to "maintain insurance covering the Sculpture against loss or damage," and that in the event of the destruction of the Sculpture, CSU had the option to terminate the Contract and the insurance proceeds would be "paid to the Artist to compensate the Artist for such damage or destruction." Id., ¶12.

In the Contract, the parties were clear that Mr. Lawless retained all intellectual property associated with *The Politician: A Toy*. Mr. Lawless asserted ownership of all copyright in *The Politician: A Toy*, and authorized CSU "to generate publicity regarding the Sculpture" only upon making "proper attribution to the Artist." Id., ¶18. CSU was further required by the Contract to provide Mr. Lawless notice and an invitation to "participate in any publicity pertaining to the relocation, restoration, installation and/or rededication of the Sculpture." Id., ¶9. The parties also agreed to comply with all applicable laws, including federal laws, during the course of the Contract. Id., ¶32.

> **d.** **CSU's long history of permitting Mr. Lawless to continuously update and control the content of *The Politician: A Toy*.**

Throughout the course of the parties' arrangement, there has never been any doubt that *The Politician: A Toy* was Billie Lawless's art. For over a decade, CSU has had an interrupted practice—consistent with its contractual obligations—of allowing Mr. Lawless to maintain and modify his art. *The Politician: A Toy* was dedicated at CSU on November 13, 2009, consistently with CSU's contractual obligation to provide Mr.

Lawless notice and an invitation to participate in the ceremony. Id., ¶24. When the Sculpture was dedicated, it included roughly double the amount of text on the fencing that is shown in the parties' Contract; Mr. Lawless had incorporated text into all 4 sides of the fencing, instead of just 2 sides. Lawless Aff., ¶22. On February 8, 2012, Mr. Lawless installed a textual sculptural element on the Northwest corner of the fence which said "OBAMA SCARE." "OBAMA SCARE" remained on *The Politician: A Toy* until Mr. Lawless removed it on June 3, 2013. CSU never covered, complained, or mentioned the OBAMA SCARE element to Plaintiff. Id., ¶¶25-27.

In or around November 2012, Plaintiff became aware that CSU intended to allow a vegetable garden on the property immediately surrounding the Sculpture. Id., ¶28. Following Plaintiff's objection, CSU decided to not allow the proposed garden to be constructed on the property. See Id.

The initial term of the contract expired on or around August 31, 2013; CSU continued to display the Sculpture and pay rent to Plaintiff under the "Holdover" provision of the parties' Contract. On or about January 30, 2015, notwithstanding Mr. Lawless's modifications to the Sculpture, the parties executed a First Amendment to the Contract, extending the term of the Contract through August 31, 2017, and maintaining the essential terms of the Contract. A true and accurate copy of the executed First Amendment to Agreement is attached to Lawless Aff. as Exhibit 8. On or about October 5, 2017, the parties executed a Second Amendment to the Agreement, extending the term of the Contract as amended through August 31, 2020. A true and accurate copy of the executed Second Amendment to Agreement is attached to Lawless Aff. as Exhibit 9.

### e.    CSU censors *The Politician: A Toy*

On or about March 18, 2018, Plaintiff updated the Sculpture, adding an element which reads, "BUILD A WALL OF PUSSIE." Lawless Aff., ¶31. "BUILD A WALL OF PUSSIE" is a reference to President Donald Trump's campaign-promise-turned-shutdown-ultimatum to build a wall along the Southern border of the United States, juxtaposed with his history of misogynist sexualized language, particularly his infamous recorded comments during a taping of *Access Hollywood*:

> **Mr. Trump**: … You know, I'm automatically attracted to beautiful — I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything.
>
> **Mr. Bush**: Whatever you want.
>
> **Mr. Trump**: Grab 'em by the pussy. You can do anything.[2]

This text remained on the Sculpture until Mr. Lawless removed it during the course of routine repairs on April 1, 2018. Mr. Lawless re-installed "BUILD A WALL OF PUSSIE" on October 13, 2018. Id., ¶¶31-34.

On or about October 15, 2018, CSU covered Mr. Lawless's sculptural element with a re-used vinyl banner from a CSU homecoming event. CSU did not consult with Mr. Lawless prior to modifying *The Politician: A Toy*. On October 17, 2018, CSU's Fiscal Manager, James Gross, requested Mr. Lawless remove the text element from the Sculpture. On October 18, 2018, Mr. Lawless, through Counsel, asserted his First Amendment rights in his Sculpture, and demanded that CSU remove the covering of

---

[2] *See* Daniel Victor, *'Access Hollywood' Reminds Trump: 'The Tape Is Very Real,'* The New York Times, Nov. 28, 2017, https://www.nytimes.com/2017/11/28/us/politics/donald-trump-tape.html.

the censored text. CSU proposed that the parties terminate the contract, and offered to pay Mr. Lawless to remove the Sculpture, conditioned on Plaintiffs' waiving any and all claims regarding the Sculpture. On November 28, 2018, CSU, through its General Counsel, sent an email purporting to terminate the Contract. Id., ¶¶34-41.

## II. Law and Argument

### a. Standard for Preliminary Injunction

There are four relevant factors in deciding this motion: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012), *citing Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007). In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because ... the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the [state action]." *Bays* at 819, quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir.2007). Mr. Lawless has a strong likelihood of success on each of its claims, but particularly for their claims which weigh in favor of injunctive relief: the First Amendment claims and the VARA claims.

     **b.**    **Mr. Lawless has a strong likelihood of success on the merits of his claims.**

     **1.**    **CSU's censorship is an intentional distortion of Mr. Lawless's Sculpture that damages his reputation and misattributes work he did not create to him in violation of 17 U.S.C. § 106A et seq.**

The Visual Artists Right Act, 17 U.S.C. § 106A *et seq.* ("VARA") protects works of visual art, and the sculptural element of "BUILD A WALL OF PUSSIE" on *The Politician: A Toy*, as fashioned by Mr. Lawless and incorporated into his well-known Sculpture, entitles Mr. Lawless to the moral rights in VARA. Under the Copyright Act — of which VARA is a part—a work is "'created' when it is fixed in a copy … for the first time[.]" 17 U.S.C. § 101. And a work is "'fixed' in a tangible medium of expression when it "is sufficiently permanent or stable to permit it to be perceived . . . for a period of more than transitory duration." *Id.* From the moment Mr. Lawless fixed his expression in the Sculpture, it was eligible for the protections VARA affords to artists.

VARA protects artists' moral rights in certain works, and gives Mr. Lawless rights of attribution and integrity in his Sculpture. Under VARA, an author of a work of visual art has the rights,

     (a)(1)(B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create;

and

     (a)(3)(A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right,

17 U.S.C. § 106A.

CSU's re-used homecoming banner emblazoned on the most prominent

elevation of *The Politician: A Toy* alters the Sculpture so fundamentally that it is a misattribution—Mr. Lawless did not create the Sculpture as it is being displayed, and to associate his name with the work as modified violates § 106A(a)(1)(B). CSU's modifications are offensive to his artistic vision on a sculpture he has been working on continuously for decades. Similarly, Defendants' alteration of Mr. Lawless's Sculpture has damaged, and continues to damage, Mr. Lawless's reputation as an artist who addresses censorship and other political topics in violation of § 106A(a)(3)(A). Every moment that CSU's banner remains in place is a moment where a viewer of the censored version of *The Poltician: A Toy* might reasonably conclude that Mr. Lawless has acceded to CSU controlling his political message. Viewers familiar with Mr. Lawless and his work might conclude that he is not as vigorous in defense of his work as he was when he climbed atop *Green Lightning* in Buffalo, or sought an injunction to uncover *Didy Wah Didy* in Columbus. Mr. Lawless requests that this court order immediate injunctive relief to stop this censorship, and vindicate his rights in his artwork.

> **2. CSU's censorship of the reference to President Trump on *The Politician: A Toy* is viewpoint-based discrimination in violation of Mr. Lawless's First Amendment rights.**

There is no viewpoint-neutral basis to censor *The Politician: A Toy*, and CSU's covering a part of the Sculpture is an unconstitutional prior restraint. Whether CSU objects to Mr. Lawless's political message, or finds his word choice offensive (or both), either would constitute impermissible viewpoint-based censorship.

Moreover, CSU's decision to cover the Sculpture is particularly odious, as its censorship constitutes a presumptively unconstitutional prior restraint. *See Bantam*

*Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Prior restraints are "administrative and judicial orders that block expressive activity before it can occur." *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir. 2001) (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993). "Under a system of prior restraint, the lawfulness of speech turns on the advance approval of government officials." *Id*. In order to satisfy the requirements of the First Amendment, the Supreme Court has set forth three procedural safeguards to protect against the suppression of protected expression by prior restraint. *Freedman v. Maryland*, 380 U.S. 51 (1965). First, any restraint before judicial review occurs can be imposed only for a specified brief period during which the status quo must be maintained. Second, prompt judicial review of a decision regarding a prior restraint must be available. Third, the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof in court. *Id*. at 58-59. None of those required procedural safeguards were offered to Mr. Lawless; CSU simply covered his art without notice or consultation with the artist. Lawless Aff. at 37.

### A. CSU has expressly and continuously opened its property to Mr. Lawless's protected political speech

*The Politician: A Toy* is Mr. Lawless's political speech, and CSU may not discriminate against his political viewpoint. While the government "may reserve the forum for its intended purposes, communicative or otherwise," it may only do so "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44 (1983). Here, by CSU's invitation of Mr. Lawless's display of the Sculpture on university property, and allowing him to

continually update and maintain it, while maintaining ownership rights as well as the right to "proper attribution to the Artist" whenever publicity about the Sculpture is generated, the parties have left no doubt as to the fact that the Scuilpture is Mr. Lawless's speech, not CSU's.[3] Thus, CSU has created a limited public forum designated for Mr. Lawless's commentary on U.S. politicians. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) ("Although a speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum … the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.") (internal citations omitted). It is precisely this type of commentary by Mr. Lawless—on the moment's most prominent U.S. politician—to which CSU has unlawfully administered viewpoint-based censorship.

CSU agreed to bring *The Politician: A Toy* to its campus after it had been displayed for over a decade on private property nearby, and it did so with full knowledge of *The Politician: A Toy*'s explicit political messaging, the Sculpture's dynamic state, and Mr. Lawless's history of controversy. By the parties' Contract (at 1), CSU brought *The Politician: A Toy* to its campus with a guarantee that Mr. Lawless would "provide for the ongoing operation, maintenance and repair of the structure,"

---

[3] Indeed, when a dispute arose regarding the placement of a community garden on the same parcel as the Sculpture, *Cleveland.com* quoted the community garden organizer in explaining why these plans were ultimately shelved, saying, "[CSU] loved [the garden], the president approved and everybody was on board. Except for [Mr. Lawless]." Karen Farkas, Cleveland State University to keep sculpture and not allow community garden, Cleveland.com, Jun. 20, 2013, https://www.cleveland.com/metro/index.ssf/2013/06/cleveland_state_university_to_2.html

thus allowing CSU to benefit not just from the artwork itself, but in the message sent to its students, faculty, and the public at large about the value of free speech by granting such a forum to an accomplished artist and social commentator.

Mr. Lawless has continuously maintained and updated *The Politician: A Toy* both functionally and artistically, and CSU has only censored the Sculpture when Mr. Lawless added "BUILD A WALL OF PUSSIE." Under the parties' Contract, CSU agreed that it would not have any control over the content of the Sculpture, and CSU explicitly agreed that it would not "alter, modify, disassemble or demolish" the Sculpture. Contract at ¶15.

As the parties' contract and course of dealing, described above, make clear, *The Politician: A Toy* has always been, and always will be, attributable to Mr. Lawless, and no reasonable observer would confuse his message for CSU's speech. That CSU now wishes to censor Mr. Lawless's reference to President Trump when it did not censor references to President Obama or a number of other U.S. politicians is viewpoint-based discrimination, and violates the First Amendment.

**B.**     *The Politician: A Toy* **is core political speech.**

The First Amendment embodies the right of citizens to participate in political speech, and CSU may not censor Mr. Lawless because of his protected expression. "The Free Speech Clause exists principally to protect discourse on public matters, but we have long recognized that it is difficult to distinguish politics from entertainment, and dangerous to try. …Under our Constitution," esthetic and moral judgments about art and literature ... are for the individual to make, not for the Government to decree, even

with the mandate or approval of a majority." *Brown v. Entertainment Merchants Ass'n.*, 564 U.S. 786, 790 (2011) (internal citations omitted). *The Politician: A Toy* is at its essence art that addresses and comments upon political topics, symbolically and explicitly.

### C.    Censorship of 'offensive' language is viewpoint-based discrimination

Mr. Lawless's Sculpture does not come close to the line of "obscene" speech that is outside the bounds of First Amendment protection.[4] Further, the U.S. Supreme Court has repeatedly affirmed that, "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017), quoting *Street v. New York*, 394 U.S. 576, 592 (1969). *See also United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 814–816 (2000); *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992). CSU may not censor "BUILD A WALL OF PUSSIE" because it finds the particular words or combination of words offensive, particularly once it has opened up its property for Mr. Lawless's political speech continuously for over ten years. "Giving offense is a viewpoint." *Matal* at 1763 (2017).

_____

[4] The controlling test for determining whether speech may be censored as "obscene" requires the finder of fact to assess, "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). There is no colorable argument that the mere expression of a common slang term for the female anatomy could qualify here, particularly in the highly relevant political context in which this term has been raised. Indeed, even "indecent sexual expression," which Lawless's Sculpture is surely not, does not rise to the level of "obscene" and is thus "protected by the First Amendment." *Sable Communications of California v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).

**3.    CSU's purported termination of the Contract is viewpoint-based discrimination in violation of Mr. Lawless's First Amendment Rights.**

As a contractor with a governmental entity, Mr. Lawless has a right to not have his contract terminated for exercising his First Amendment rights, thus providing grounds for relief independent of the analysis set forth above. *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 686 (1996). Government contractors are protected under the First Amendment, and Mr. Lawless's speech should be analyzed under the balancing test set forth in in *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968), adjusted to account for the government's interest in the contract. *Umbehr* at 674 ("the *Pickering* balancing test, adjusted to weigh the government's interests as contractor rather than as employer, determines the extent of [a contractor's] protection."). Even if CSU could have terminated the Contract for no reason it all, it is subject to First Amendment scrutiny if Mr. Lawless's protected speech was a "substantial or motivating factor" in its termination. *See Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977).

Under *Pickering* and *Umbehr*, the key inquiry is the "balance between the interests of the [contractor], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its [contractors]." *Pickering* at 568. Mr. Lawless's situation is unique, because he is not an employee, vendor, or service provider like many other contractors—Mr. Lawless is an independent artist, and he is not performing any governmental function. *See Umbehr* at 678, recognizing "the variety of interests that may

arise in independent contractor cases."

Thus, Mr. Lawless easily meets all three prongs of the *Pickering* test. First, *The Politician: A Toy* as a whole is speech on a matter of public concern—it explores themes of political discourse and (in)effective governance—and the portion that CSU is censoring is arguably the most relevant to the current political debate. Indeed, CSU is censoring "BUILD A WALL OF PUSSIE" while, as of the date of this filing, the federal government has been largely shutdown because President Trump insists that a government-funding bill include appropriations for a wall along the border between the United States and Mexico. CSU's censorship of a reference to a Republican President on a sculpture generally critical of politicians is clear evidence of content- and viewpoint-based discrimination; this is especially true when CSU did not censor *The Politician: A Toy* when it referenced President Obama and numerous other U.S. politicians

As to the second and third prongs, Mr. Lawless, as an independent artist, does not have any official duties, and his speech interests outweigh any claim that his Sculpture is performing any governmental function. CSU brought *The Politician: A Toy* to its campus in order to allow Mr. Lawless to display his art and viewpoint; from all the information available to CSU, the Sculpture would be a running commentary on U.S. politicians. The censored speech is entirely consistent with the reasons *The Politician: A Toy* was brought to CSU in the first place, and CSU may not prevent its display merely because it disagrees with its message. *Umbehr* at 680 ("The First Amendment permits neither the firing of janitors nor the discriminatory pricing of state

lottery tickets based upon the government's disagreement with certain political expression."). Mr. Lawless's art is on display precisely because it is dynamic speech on matters of public concern, and his speech interests outweigh any interests CSU might claim in censoring the Sculpture.

          **c.**     **Plaintiff continues to suffer irreparable harm.**

Plaintiff's reputation continues to be irreparably harmed by Defendants' censorship: any potential viewer, on any given day, while walking by *The Politician: A Toy*, will see it in its modified and censored state. Mr. Lawless is an artist who carefully guards the reputation of his works. Members of the public who view *The Politician: A Toy* see an altered version of the Sculpture, and from certain perspectives, see promotional material for Cleveland State University: "*Welcome Home Viking Alumni.*"

Violation of a First Amendment right by itself constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). When First Amendment freedoms are at risk, the irreparable harm factor "merges" with the likelihood of success, such that if the plaintiff shows he is likely to succeed on the merits, he has simultaneously proven he will suffer an irreparable harm. *See McNeilly v. Land*, 684 F.3d 611, 620–21 (6th Cir.2012). Every moment that passes while *The Politician: A Toy* remains censored is a constitutional violation of his rights and the rights of potential viewers of the Sculpture.

Similarly, Defendants' continuing VARA violations carry the presumption of irreparable harm. *See Carter v. Helmsley–Spear, Inc.*, 852 F.Supp. 228, 232 (S.D.N.Y.1994)

(VARA rights are not economic in nature, and irreparable harm should be presumed on showing of violation). Temporary and permanent injunctions are particularly appropriate for violations of artists' statutory moral rights. *See* 17 U.S.C. § 502.

> **d.**     **An injunction would not cause substantial harm to Defendants.**

Removing CSU's censorship would not cause substantial harm to Defendants. Restoring the Sculpture to its pre-censored state would stop CSU's ongoing constitutional, statutory, and contractual violations, and might indeed *reduce* CSU's damages if Plaintiff prevails on the merits.

CSU claims to be an institution that values free speech. Presumably, this was the reason CSU agreed to display *The Politician: A Toy* in the first place. The Sculpture is at its very essence a controversial political piece, and Mr. Lawless had widely publicized reputation as an opponent of censorship. CSU, as recently as last year, reiterated its commitment to freedom of speech, even to the point of tolerating lewd, offensive, and threatening speech targeting LGBTQ+ students, when CSU faced criticism for saying that included a poster including slur for homosexual people and encouraging suicide "would be allowed" "[a]ccording to the legal framework of free speech."[5] The University has enacted an "Expressive Activity Policy," wherein CSU wishes to "promote the free exchange of ideas," "foster[] free speech, assembly and other expressive activities on university property by all persons," and recognizing "the constitutional freedoms guaranteed by the United States and Ohio constitutions,

---

[5] Karen Farkas, *Flier at Cleveland State University encouraging LGBTQ students to consider suicide upsets students*, Cleveland.com, Oct. 17, 2017, https://www.cleveland.com/metro/index.ssf/2017/10/flyer_at_cleveland_state_unive.html.

including freedom of speech, press and assembly."[6] An injunction would be consistent with CSU's messaging regarding its commitment to freedom of speech and the First Amendment, and CSU cannot claim any harm that would pass constitutional muster.

### e. The public interest supports an injunction.

An injunction would vindicate Mr. Lawless's constitutional and statutory rights as described herein, it would also allow the public to see the Sculpture as intended by the artist. "[T]he Constitution protects the right to receive information and ideas." *Board of Ed., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 871–872 (1982), quoting *Stanley v. Georgia*, 394 U.S. 557 (1969). Viewers should see Mr. Lawless's art as he intends it to be seen. Further, they should see what CSU found so objectionable that they hastily covered it without notice to Mr. Lawless in clear violation of the parties' Contract, VARA, and the First Amendment.

## III. Conclusion

Mr. Lawless is a highly accomplished artist whose work is known for exploring controversial political themes. *The Politician: A Toy*, over the years, has sparked dialogue about political messaging, and has referenced both Democratic and Republican presidents. After an uninterrupted decade of allowing Mr. Lawless to express his political viewpoints, CSU now imposes an unconstitutional prior restraint that targets Mr. Lawless's reference to President Trump, misrepresents Mr. Lawless's art, and damages Mr. Lawless's reputation. Thus, as explained fully above, the Court should

---

[6] Cleveland State University, Policy No. 3344-2-06: Expressive Activity Policy, Effective Nov. 30, 2015, https://www.csuohio.edu/sites/default/files/Expressive-Activity-Policy.pdf.

immediately restrain and enjoin CSU from censoring the Sculpture and require it to

show cause why this Court should not issue a preliminary injunction extending such

relief until this matter can be fully adjudicated on the merits.

Respectfully submitted,

*/s/ Andrew C. Geronimo*
Andrew C. Geronimo (OH #0086630)
Peter Pattakos (OH # 0082884)
THE PATTAKOS LAW FIRM LLC
101 Ghent Road
Fairlawn, OH 44333
Phone: 330.836.8533
Fax: 330.836.8536
ageronimo@pattakoslaw.com
peter@pattakoslaw.com

## DECLARATION OF COUNSEL

I, Andrew Geronimo, attorney for Billie Lawless, declare as follows:

1. I represent the Plaintiffs, Billie Lawless and A Politician: A Toy, Inc. in this case.

2. I am a citizen of the United States of America and a resident of the State of Ohio.

3. I have personal knowledge of the matters stated herein.

4. Prior to initiating this action, I wrote a letter to Cleveland State University dated January 7, 2019, demanding the immediate removal of the censorship at issue in this case, and setting forth the essential causes of action and legal authority contained in this motion. I indicated that if the Sculpture remained censored after January 14, 2019, I was "prepared to initiate a lawsuit to seek an appropriate judicial order to remove CSU's modifications."

5. On January 11, 2019, I received an email from Mr. George Hamm, Associate General Counsel at Cleveland State University, requesting a meeting to further discuss the matter.

6. On January 14, 2019, I replied by email agreeing to a meeting, stating that I knew that the parties had already met at least once to resolve the matter, and that "unless CSU is willing to remove the shrinkwrap from Mr. Lawless's art, I do not believe a meeting would be productive."

7. On Thursday, January 17, 2019, I accompanied Mr. Lawless to a meeting with Ms. Sonali Wilson, General Counsel at Cleveland State University. Ms. Amy Golian, Chief, Education Section, Ohio Attorney General's Office, attended the meeting remotely by telephone.

8.  At this meeting, I indicated again that our primary purpose was to uncensor and restore *The Politician: A Toy*. CSU was not willing to discuss removing its banner from Mr. Lawless's Sculpture, and sought to terminate the agreement and remove the Sculpture as soon as possible.

9.  Mr. Lawless reiterated that he would not consider additional proposals that did not entail removal of CSU's banner.

10. Before leaving the meeting, I informed Ms. Wilson that I was prepared to file a lawsuit to seek an order to end the censorship. I told her this matter was urgent, and to contact me immediately should CSU reconsider its position.

11. I have provided copies of all pleadings and papers filed in this action to date by email to Attorneys Wilson, Hamm, and Golian.

12. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on January 24, 2019.


*/s/ Andrew C. Geronimo*
Andrew C. Geronimo

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2019, I served a complete copy of the

foregoing on the following by hand-delivery and email to:

Sonali Wilson
General Counsel, Cleveland State University
2121 Euclid Avenue
Cleveland, OH 44115
s.b.wilson@csuohio.edu

On this date, my office has also filed this document using the Court's electronic filing

system which will serve copies on all necessary parties.

*/s/ Andrew C. Geronimo*
Andrew C. Geronimo (OH #0086630)
*Attorney for Plaintiffs*