

# ALLEGANY COUNTY COURTS

*Courthouse ❦ Belmont, New York 14813 ❦ (716) 268-5800*

Wayne A. Feeman, Jr.  
Judge

Peter R. Sprague  
Judge

RECEIVED JUN 7 1985

6 June 1985

Special Term Clerk  
Supreme Court  
Erie County Hall  
Franklin Street  
Buffalo, New York   14202

Re:  Lawless vs. City of Buffalo, et al

Greetings:

    Enclosed please find the decision I have rendered in the matter captioned above.

    By copy of this letter to Attorneys Dudek and Brown I am providing each of them with a copy of this decision. Please file the decision in the usual manner.

    Under separate cover I will forward to you the contents of the file which I have used in reaching the decision.

    Many thanks for your attention to the above.

                                Very truly yours,

                                  Wayne A. Feeman, Jr.

WAF:cm  
c:  Gregory J. Dudek, Esq.  
    Michael J. Brown, Esq.


MARCEO COPY

STATE OF NEW YORK

SUPREME COURT                  COUNTY OF ERIE

Present: Hon. Wayne A. Feeman, Jr.
          Acting Supreme Court Justice

------------------------------------------

Application of William B. Lawless, III,
Petitioner for Judgment pursuant to
Article 78 of the CPLR,

                 Petitioner,

vs.

The City of Buffalo, James D. Griffin,     Index No.
Mayor of the City of Buffalo,              H-49635
The Buffalo Urban Renewal Agency,
James J. Militello, Vice-Chairman City
of Buffalo Urban Renewal Agency and
Walt's Tree Service, Inc.,

                 Respondents.

------------------------------------------

                 - - - D E C I S I O N - - -

I

William B. Lawless, III, petitioner in the Article 78 proceeding before this court, sought and gained permission to construct a sculpture entitled "Green Lightning" on the Elm Oak High Tech Industrial Corridor in Buffalo. The sculpture was constructed, dedicated and illuminated. The Mayor of the City of Buffalo subsequently deemed the sculpture to be a public nuisance and ordered that it be dismantled. The sculpture was in the process of being dismantled, when, on November 20th, 1984, Petitioner Lawless obtained from the Hon. Vincent E. Doyle an order requiring the respondents to show cause why judgment should not be entered compelling them to comply with the permit agreement, and prohibiting them from dismantling or interfering with the display of the petitioner's sculpture. Justice Doyle ordered that the status quo be maintained by prohibiting the respondents from further dismantling the sculpture and by ordering that Petitioner Lawless was not to illuminate the sculpture. The matter was set down for a hearing on February 29th, 1985.

On January 31st, 1985, Petitioner Lawless served a notice of motion to amend his petition and dismiss the counterclaims. The answers to the counterclaims were served on February 13th, 1985.

On February 14th, 1985, respondents, through the corporation counsel, served Petitioner Lawless with a summons and complaint pursuant to CPLR 6330. The corporation counsel of the City of Buffalo commenced this CPLR 6330 action to enjoin the display of Lawless's sculpture in its illuminated state. The

City of Buffalo maintains that the display of the structure "Green Lightning" is obscene, lewd, lascivious, indecent or disgusting and is therefore in violation of the law. The following relief is sought: (1) an order permanently enjoining and restraining the defendant, his agents and servants from displaying the structure, (2) an order directing the defendant to surrender to the Sheriff of Erie County the "Green Lightning" structure and (3) an order directing the Erie County Sheriff to seize and destroy the structure. An answer to the CPLR 6330 action was served on February 20th, 1985.

On February 20th, 1985, counsel entered into stipulations of fact and presented certain joint exhibits which were received by the Court. It was agreed that these stipulations of fact and joint exhibits could be used by the Court in determining both the Article 78 proceeding and the CPLR 6330 action. Following are the operative facts stipulated to by the parties:

1. The concept of the sculpture was properly presented by petitioner, Mr. Lawless, to the Common Council, The Buffalo Arts Commission and to the Buffalo Urban Renewal Agency.

2. The concept of the sculpture was approved by the Common Council, The Buffalo Arts Commission and the Buffalo Urban Renewal Agency.

3. The building and electrical permits were duly issued by the City of Buffalo.

4. The permit agreement was duly executed by Mr. Militello as Commissioner of the Community Development and vice-chairman

of the Buffalo Urban Renewal Agency.

5. William Lawless constructed the sculpture, referred to as "Green Lightning".

6. On November 15th, 1984, the sculpture was dedicated and illuminated. Present at the dedication were Mr. Samuel Magaverin, chairman of The Buffalo Arts Commission; David More, Executive Director of The Buffalo Arts Commission; Bruce Johnston, President of SUNY College at Buffalo; William Currey; William Lawless and others.

7. On November 16th, 1984, Mayor Griffin, after seeing the television news programs which aired on November 15th, 1984, showing the illuminated structure, and after reports to his office on November 16th, 1984, deemed the sculpture to be a public nuisance. The reports referred to were made by various private citizens and government officials.

8. Mayor Griffin directed Commissioner Militello to revoke the permit and abate the nuisance. At the direction of Commissioner Militello certain city employees were directed to dismantle and store the sculpture and these events took place November 16th, 1984. At the site where the employees for the City of Buffalo were gathering to carry out Mr. Militello's directions a conference was held between Mr. Brown, as attorney for Mr. Lawless, and Mr. Dudek, attorney for The Buffalo Urban Renewal Agency, and it was agreed that the dismantling would cease. It was also agreed that Mr. Lawless would not illuminate the sculpture over the weekend, and that the attorneys (Mr. Brown and Mr. Dudek) would discuss

the matter on Monday, November 19th, 1984. On November 19th, 1984, Mr. Brown called Mr. Dudek and Mr. Dudek advised Mr. Brown that he was having difficulty supplying Mr. Brown with any information. On Tuesday, November 20th, Mr. Brown called Mr. Dudek, and when Mr. Dudek was asked by Mr. Brown to assure him that no action would be taken until negotiations could be held, and that the two attorneys had an agreement to that effect from the previous Friday. Mr. Dudek reminded Mr. Brown that the agreement was only for the weekend; that he could give no assurances; and that he would call Mr. Brown. Mr. Dudek told Mr. Brown that he possibly could not have prior knowledge of any actions that might be taken and that even if he did, the attorney-client privilege would preclude him from contacting Mr. Brown.

9. On November 20th, 1984, at approximately 4:30 p.m. employees of Walt's Tree Service were dispatched to the scene by the City to dismantle the sculpture.

10. At 7:15 p.m. on November 20th, 1984, a temporary restraining order signed by Justice Vincent E. Doyle was served upon the employees of Walt's Tree Service and David More, and the dismantling ceased.

11. On November 21st, at a regularly scheduled meeting of The Buffalo Urban Renewal Agency, a motion was made ratifying the actions of the Mayor, and directing Commissioner Militello to cause the sculpture to be demolished and to rescind the approval granted on October 13th, 1983. That motion carried.

12. Subsequent to November 21st, 1984, The Buffalo

Arts Commission also rescinded its approval previously granted. On that date Samuel Magaverin from The Buffalo Arts Commission wrote a letter to various individuals, and that letter appears in the issue of the _Buffalo Arts Review_ which is joint Exhibit 11.

During the proceedings before this court on February 20th, 1985, the attorney for Petitioner Lawless moved for severance of the contract related counterclaims from the Article 78 proceeding. This motion for severance was granted.

Counsel for the respondents in the Article 78 proceeding moved, pursuant to CPLR 602 (a) for consolidation or joint trial of the Article 78 proceeding and the CPLR 6330 action. The motion for a joint trial was granted.

II

This Court will first address the Article 78 petition. The petitioner is seeking an order prohibiting the respondents from dismantling or otherwise interfering with the display of the "Green Lightning" sculpture.

Respondents contend that a declaratory judgment action rather than an Article 78 proceeding is the more appropriate action.

Petitioner argues that respondents acted in violation of petitioner's constitutional rights and the respondents' actions were therefore without and in excess of their jurisdiction. In support of this proposition petitioner contends that his sculpture, as a form of expression, enjoys the protections of the First Amendment to the United States Constitution and Article I, Section 8 of the New York State Constitution.

Petitioner argues that respondents' actions were in the nature of "prior restraint" upon his freedom of expression. He maintains that any regulations or restrictions on protected speech within the First Amendment must be accompanied by rigorous procedural safeguards.

Respondents argue that the question of the validity of the agreement executed between the petitioner and the respondent, Buffalo Urban Renewal Agency, is crucial to establishing whether any constitutionally protected interest was created in favor of the petitioner. Respondents contend that the land upon which the sculpture is erected is a non-public forum for First Amendment purposes, and that therefore

petitioner's constitutional interests which he seeks to protect are minimal and do not warrant the granting of a writ of prohibition.

The extraordinary writ of prohibition is appropriate only when there is a clear legal right. [Matter of Dondi vs. Jones, 40 NY2d 8, 13] and only when the body or officer "acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction." [Matter of State of New York vs. King, 36 NY2d 59, 62]

An Article 78 proceeding in the nature of prohibition is designed to prevent inferior courts, tribunals or officers from proceeding with judicial or quasi-judicial matters over which they have no authorized or inherent jurisdiction or have lost jurisdiction or to prevent them from exceeding jurisdiction or powers in matters over which they have cognizance. [Carmody-Wait 2d Proceeding Against Body or Officer, Section 145:206]

The remedy is available to prevent judicial or quasi-judicial action [Matter of Dondi vs. Jones, supra at page 13; Matter of B. T. Prod. vs. Barr, 44 NY2d 226]; and may not be sought to control merely legislative, executive or administrative acts . . ." [Nicholson vs. State Commission on Judicial Conduct, et al, 50 NY2d 597, 606]

Thus, a proceeding in the nature of prohibition is generally available when there is presented an arguable and substantial

claim of such an excess of power. [See LaRocca vs. Lane, 37 NY2d 575.] It is immaterial to this threshold determination whether the claim will be determined adversely to petitioner on the merits. The possibility that ultimate relief might be denied does not preclude the proceeding in the nature of prohibition.

A decision to issue a writ of prohibition is left to the Court's sound discretion [Matter of Hogan vs. Court of Gen. Sessions of County of N.Y., 296 NY 1, 8] The Court should consider various factors in exercising this discretion, such as the gravity of the harm caused by the excess of power, the availability or unavailability of an adequate remedy on appeal or at law or in equity; and the remedial effectiveness of prohibition if such an adequate remedy does not exist. [La Rocca vs. Lane, supra, at 579-580; Matter of Dondi vs. Jones, supra]

Article 78 proceedings are brought to review individual, single incidents, which in the case at bar is the threatened dismantling of a sculpture. Article 78 proceedings are unlike declaratory judgment actions which are brought to review a continuing policy. [See Matter of Morgenthau vs. Erlbaum, 59 NY2d 143; Zuckerman vs. Board of Education, 44 NY2d 336.]

It is this Court's opinion that questions concerning First Amendment forums, restrictions on expression and validity of the agreement need not be decided in this Article 78 proceeding. ==The petitioner did gain access to the Elm Oak area through an application and approval process.== It is

therefore clear that petitioner was allowed to erect his sculpture in the Elm Oak area, but that his expression was subject to certain restrictions. ==He therefore possesses certain rights in his sculpture and is therefore not precluded from seeking relief by way of an Article 78 proceeding.==

After an examination of the above-cited law and facts, it is also this Court's opinion that ==an Article 78 proceeding is a more appropriate action than a declaratory judgment action.==

The issues which need to be addressed in this proceeding are:

(1) Does the sculpture create a public nuisance?

(2) If a sculpture does create a public nuisance, are respondents justified in invoking the police power to summarily abate the nuisance without resort to judicial process?

III

Petitioner Lawless contends that at the time the respondents dismantled the sculpture, (1) the sculpture was not illuminated, (2) he, through his attorney, had agreed to and had made attempts to extend the agreement concerning the non-illumination beyond the weekend, (3) counsel for respondents could not discuss the matter with petitioner's attorney, (4) the petitioner made no effort to relight the sculpture. He argues that under these circumstances there was simply no immediate danger to the public, and no exigent circumstances which required or justified the actions of the respondents.

Respondents in the amended answer and counterclaim to the Article 78 proceeding contend that the sculpture in its graphic portrayal, depiction and display of the human male sex organs, with the neon light component illuminated, constitutes a public nuisance. They further contend that the sculpture falls within the category of a public nuisance, because it is located near a major arterial to downtown Buffalo where vehicle occupants have an unobstructed view of the sculpture. They maintain that the sculpture threatened the public order of the city because of the likelihood of massive traffic jams, which would result in property damage to vehicles and in injury and death to vehicle occupants.

It is the respondents' position that the right of summary abatement of nuisances without judicial process or proceedings is an established principal of the common law even though the exercise of such right may result in the destruction of property.

Respondents contend that there is no denial of due process involved in the summary destruction of property which may be regarded as a public nuisance and that in exercising its police power, the state may authorize its officers to summarily abate public nuisances without resort to legal proceedings and without notice or a hearing.

As the term "public nuisance" has been used by the New York courts, it is incapable of any exact or comprehensive definition. [State of New York vs. Waterloo Raceway, 96 M2d 350; Melker vs. City of New York, 190 NY 481.]

"Public is the nuisance whereby 'a public right or privilege common to every person in the community is interrupted with,' . . . 'in such place and in such manner that the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community, which may be properly the subject of a public prosecution.'" [People vs. Rubenfeld, 254 NY 245, 247]

A public nuisance exists where the location at which and the manner in which the particular operation is conducted is such that it causes substantial annoyance and discomfort indiscriminately to many who are continually or may from time to time be in the vicinity. [Town of Mount Pleasant vs. Van Tassell, 7 M2d 643, 645; affirmed 6 AD2d 880]

Each case of an alleged nuisance must be separately analyzed. It depends upon the location, the character of the neighborhood, nature of the use, extent and frequency of

the injury, and the effect upon the enjoyment of life, health and property. [Slattery vs. Herbstone Realty Company, 233 NY 420]

The exercise of the remedy of summary abatement of a nuisance without judicial proceedings must be confined to doing what is necessary to abate the nuisance. [42 NY Jur, Nuisances, Section 47; Lawton vs. Steel, 119 NY 226; affirmed 152 US 133] The Courts have consistently recognized the right of a municipality pursuant to its police powers to prevent conditions dangerous to public health and welfare. [Matter of Wulfsohn vs. Burden, 241 NY 288] The Courts have also insisted though, that any restrictions or limitations pursuant to the police power be kept within the limits of necessity. [Arverne Bay Construction Company vs. Thacher, 278 NY 222, 230]

". . . [A] municipality may not invoke its police powers solely as a pretext to assuage strident community opposition. To justify interference with the beneficial enjoyment of property the municipality must establish that it has acted in response to a dire necessity, that its action is reasonably calculated to alleviate or prevent the crisis condition, and that it is presently taking steps to rectify the problem. When the general police power is invoked under such circumstances it must be considered an emergency measure and is circumscribed by the exigencies of that emergency." [Matter of Belle Harbor Realty vs. Kerr, 35 NY2d 507, 512]

If there is doubt as to whether a nuisance exists, a

Lawless
Part III, Page Four

municipality should proceed by action to restrain or abate the nuisance and thus have the protection of a judgment for what it may do. [People ex rel John Copcutt vs. The Board of Health of the City of Yonkers, 140 NY 1]

Respondents have never indicated that the sculpture, in an unilluminated state, constituted a public nuisance. Mayor Griffin in his press release of November 19th, 1984, stated in pertinent part:

> Because of the public clamor and the threatened public calamity that very well could arise by a continued display of the neon light component, I ordered the sculpture to be dismantled.
>
> After all, the location is on a major arterial to downtown Buffalo and the controversy that the neon lighting caused could easily have resulted in major traffic jams to nothing of potential property damage and perhaps even physical injury as a result of automobile accidents.
>
> Coupled with the apparent breach of the agreement, the final sculpture appeared to create a public nuisance, because, among other things, it had the potential of tending to obstruct and rendering a public street dangerous.
>
> Even though I ordered the whole thing taken down, Commissioner Militello, through negotiations with our legal counsel and the artist's attorney agreed that we would leave the sculpture standing based on the artist's assurance that the neon lights would be left off over the weekend.
>
> Because it was the lighting component which caused the uproar in the City, this was a good temporary compromise.
>
> Now we will pursue all legal remedies available

to us to remove the entire structure because the final product was not what we bargained for or in fact authorized.

It is clear that the Mayor considered the sculpture a public nuisance only when the neon light component was illuminated.

It should also be noted that on November 21st, 1984, during the proceedings before Justice Doyle, counsel for respondents stated that there was "nothing that terribly objectionable" about the sculpture as it stands in the daylight (non-illuminated).

The sculpture was not illuminated on November 20th, 1984, when the dismantling was commenced and has not been illuminated since November 16th, 1984. On November 20th, 1984, counsel for petitioner attempted to secure assurances from respondents' counsel that their agreement of no further dismantling and no further illumination would continue to be in effect. He was unsuccessful in gaining these assurances.

The sculpture, without the neon light component illuminated is not capable of being interpreted as representing a display of human male genitalia. It is therefore this Court's opinion that the sculpture, in a non-illuminated state, does not create a public nuisance. Respondents' actions in ordering the dismantling of the sculpture on November 20th, 1984, were therefore not necessary. No public nuisance existed at that time and respondents were not justified in summarily abating an alleged nuisance without judicial proceedings.

If, on November 20th, 1984, respondents felt that the sculpture might have been illuminated, they could have sought an order enjoining the threatened or anticipated nuisance. Because the sculpture is not a public nuisance in an unlighted state, the respondents are prohibited from further dismantling or interfering with the reconstruction of the sculpture as long as it remains non-illuminated.

It is also this Court's determination that the sculpture in an illuminated state does constitute a public nuisance. The illuminated sculpture, located near major arterials to downtown Buffalo, is capable of creating substantial annoyance and discomfort to, and endangering the health and welfare of those motorists who view it.

For the above-cited reasons, it is this Court's determination that the CPLR 6330 action, in which the City of Buffalo is seeking to enjoin the display of sculpture in its illuminated state, need not be decided at this time. The City is not contending that the non-lighted sculpture is capable of being interpreted as being "obscene, lewd, lascivious, filthy, indecent or disgusting." [CPLR 6330]

This Court has determined that the sculpture in an illuminated state constitutes a public nuisance. Therefore, if a source of electricity is supplied to the sculpture, this Court will then entertain an action to abate the nuisance and will also re-entertain the City's application to enjoin the display of the sculpture pursuant to CPLR 6330.

The foregoing constitutes the decision of the Court. The

respondents are to submit an order in conformance with this decision upon notice to the petitioner.

*[signature]*
Wayne A. Feeman, Jr.
Acting Supreme Court Justice

Dated: 6 June 1985

To: Gregory J. Dudek, Esq.
    920 City Hall
    Buffalo, New York   14202

    Michael J. Brown, Esq.
    1500 Statler Building
    Buffalo, New York   14202