**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **BILLIE LAWLESS,** *et al.* : | |
| : | |
| **Plaintiffs,** : | **Case No. 1:19-cv-00178** |
| : | |
| **v.** : | **JUDGE DAN A. POLSTER** |
| : | |
| **CLEVELAND STATE UNIVERSITY,** *et al.* : | |
| : | |
| **Defendants.** : | |

---

### DEFENDANTS' MOTION TO DISMISS

---

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Cleveland State University, and John Doe 1 and John Doe 2, move this Court to dismiss Plaintiffs' claims in their entirety. As explained in the Memorandum in Support, this Court lacks subject matter jurisdiction over some of Plaintiffs' claims, and the claims over which this Court has jurisdiction fail to state a claim upon which relief can be granted.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*s/ Amy Nash Golian*
_____

AMY NASH GOLIAN (0039306)
*Trial Counsel*
ASHLEY A. BARBONE (0083666)
Assistant Attorneys General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Telephone:  (614) 644-7250
Facsimile:  (614) 644-7634
amy.golian@ohioattorneygeneral.gov
ashley.barbone@ohioattorneygeneral.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

I.     STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT...................1

II.    STATEMENT OF THE CASE......................................................................................2

III.   ARGUMENT ...............................................................................................................3

      A.    Plaintiffs' contract and damages claims against the University or its employees acting in an official capacity are barred by sovereign immunity.............................4

          1.    The Court must dismiss Plaintiffs' state-law contract claim because the State of Ohio has waived sovereign immunity only for claims that are brought in the Ohio Court of Claims .......................................................................................4

          2.    The Court must dismiss Plaintiffs' damages claims against the University or its employees acting in an official capacity because Congress has not abrogated the State's sovereign immunity.........................................................6

      B.    The Court must dismiss Plaintiffs' damages claims against the unidentified University employees acting in their individual capacity because those claims are barred by qualified immunity................................................................................7

      C.    Plaintiffs are not entitled to the injunctive relief because the Complaint fails to establish that any violation of the Plaintiffs' First Amendment rights has occurred ....................................................................................................................10

          1.    Plaintiffs are not entitled to injunctive relief on Count One of the Complaint because the display of a sculpture on public property constitutes public speech ....................................................................................................................10

          2.    Plaintiffs are not entitled to injunctive relief on Count Two of the Complaint because it fails to establish that the University impermissibly took action against Plaintiffs for speaking in their roles as public citizens ......................13

          3.    Plaintiffs have not sought injunctive relief on the § 106A claims, and would not be entitled to such relief even if they had ..................................................16

IV.   CONCLUSION...........................................................................................................17

CERTIFICATE OF COMPLIANCE...................................................................................18

CERTIFICATE OF SERVICE .............................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agrawal v. Montemagno*,
  574 Fed. App'x 570 (6th Cir. 2014) .........................................................................5

*Allen v. Cooper*,
  895 F.3d 337 (4th Cir. 2018) ...................................................................................6

*Anderson v. Creighton*,
  483 U.S. 635 (1987)..................................................................................................8

*Bd. of County Comm'rs v. Umbehr*,
  518 U.S. 688 (1996)................................................................................................13

*Campinha-Bacote v. Regents of the Univ. of Mich.*,
  No. 1:15-cv-330, 2016 U.S. Dist. LEXIS 5958 (S.D. Ohio Jan. 19, 2016)............7

*Chavez v. Are Publico Press*,
  204 F.3d 601 (5th Cir 2000) ....................................................................................6

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
  473 U.S. 788 (1985)................................................................................................12

*Cristino v. Ohio Bureau of Workers' Comp.*,
  886 N.E.2d 857 (Ohio 2008).....................................................................................5

*Doe v. Dewine*,
  910 F.3d 842 (6th Cir. 2018) ....................................................................................4

*English v. BFC&R E. 11th St. LLC*,
  No. 97 Civ. 7446, 1997 U.S. Dist. LEXIS 19137 (S.D.N.Y. Dec. 2, 1997)..........17

*Ernst v. Rising*,
  427 F.3d 351 (6th Cir. 2005) (en banc) ....................................................................5

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
  527 U.S. 627 (1999)..............................................................................................6, 7

*Freedom From Religion Found., Inc. v. City of Warren*,
  707 F.3d 686 (6th Cir. 2015) ..................................................................................15

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006)......................................................................................13, 14, 15

*Hans v. Louisiana*,
    134 U.S. 1 (1890) .................................................................................................4

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .............................................................................................8

*Issaenko v. Univ. of Minn.*,
    57 F. Supp. 3d 985 (D. Minn. 2014) ..................................................................7

*Johnson v. University of Cincinnati*,
    215 F.3d 561 (6th Cir. 2000) ..............................................................................4

*Malley v. Briggs*,
    475 U.S. 335 (1986) .............................................................................................8

*Mass. Museum of Contemporary Art Found., Inc. v. Buchel*,
    593 F.3d 38 (1st Cir. 2010) ........................................................................7, 9, 16

*Mayer v. Mylod*,
    988 F.2d 635 (6th Cir. 1993) ..............................................................................3

*Mayhew v. Town of Smyrna*,
    856 F.3d 456 (6th Cir. 2017) ............................................................................14

*McCormick v. Miami Univ.*,
    693 F.3d 654 (6th Cir. 2012) ..............................................................................4

*McNeilus Truck & Mfg., Inc. v. State ex rel. Montgomery*,
    226 F.3d 429 (6th Cir. 2000) ..............................................................................5

*Measles v. Indus. Comm'n of Ohio*,
    946 N.E.2d 204 (Ohio 2011) ..............................................................................5

*Moore v. City of Harriman*,
    272 F.3d 769 (6th Cir. 2001) (en banc) ..............................................................4

*Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*,
    633 F.3d 749 (11th Cir 2008) ..............................................................................6

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .............................................................................................8

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ...............................................................................................5

*Phillips v. Pembroke Real Estate, Inc.*,
    288 F. Supp. 2d 89 (D. Mass. 2003) ..............................................................9, 17

iii

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968) ....................................................................................14, 15

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) .............................................................................1, 8, 10, 12

*Regents of the Univ. of Cal. v. Doe*,
   519 U.S. 425 (1997) ...............................................................................................4

*Reiner v. Canale*,
   301 F. Supp. 3d 727 (E.D. Mich. 2018) ................................................................7

*Romero v. Cal. DOT*,
   No. CV 08-8047, 2009 U.S. Dist. LEXIS 23193 (C.D. Cal. Mar. 12, 2009) ...........7

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) .......................................................................................10, 11

*Seminole Tribe v. Fla.*,
   517 U.S. 44 (1996) ...........................................................................................4, 6

*Sexton v. Barry*,
   233 F.2d 220 (6th Cir. 1956) ................................................................................3

*Walker v. Tex. Div, Sons of Confederate Veterans, Inc.*,
   135 S. Ct. 2239 (2015) .....................................................................................10, 11

*Ex parte Young*,
   209 U.S. 123 (1908) ............................................................................................10

**Statutes**

17 U.S.C. § 106A ............................................................................................ *passim*

17 U.S.C. § 106A(a) ..................................................................................................1

17 U.S.C. § 106A(a)(3)(A) ...................................................................................9, 16

17 U.S.C. § 106(A)(c) ..............................................................................................9

17 U.S.C. § 106A(c)(2) .....................................................................................9, 16, 17

17 U.S.C. § 511 .......................................................................................................6

42 U.S.C. § 1983 .....................................................................................................4

Ohio Rev. Code § 2743.02 .................................................................................................5

Ohio Rev. Code § 2743.02(A)(1) ........................................................................................5

Ohio Rev. Code § 2743.03(A)(1) ........................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b) ...........................................................................................................3

Fed. R. Civ. P. 12(b)(1) .......................................................................................................3

Fed. R. Civ. P. 12(b)(6) .......................................................................................................3

H.R. Rep. No. 101-514 (1990).............................................................................................17

## MEMORANDUM IN SUPPORT

## I.    STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT

Cleveland State University ("the University") currently provides a home on its campus to a sculpture created by Billie Lawless entitled The Politician: A Toy ("the Sculpture). Lawless modified the Sculpture to add a phrase that the University found objectionable. The University obscured the phrase and, when Lawless declined to remove it, terminated the contract governing the Sculpture. In response, Lawless and the corporate entity that Lawless created to manage the Sculpture ("Plaintiffs") filed a complaint in federal court alleging violations of their First Amendment rights, of the contract governing the placement of the Sculpture on University property, and of 17 U.S.C. § 106A(a), known as the Visual Artists Rights Act. That complaint must be dismissed because Plaintiffs are entitled to neither damages nor injunctive relief.

Plaintiffs' claims are barred by sovereign immunity and qualified immunity. Because the State of Ohio has consented to suit only in the Ohio Court of Claims, the Court lacks jurisdiction to interpret or enforce the contract between Plaintiffs and the University. It also cannot consider Plaintiffs' claims for damages. The University and its employees acting in their official capacity can be subject to a claim for damages in federal court only if Congress has validly abrogated the State's sovereign immunity. It has not. And although Plaintiffs also seek damages against unnamed University employees acting in their individual capacities, those claims are barred by qualified immunity.

Despite the fact that Plaintiffs can seek injunctive relief in federal court, their injunctive claims must be dismissed for a different reason: they have failed to state a claim upon which relief can be granted. It is by now well-settled that "the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Pleasant Grove City v. Summum*, 555 U.S. 460, 464

1

(2009). That settled legal principle requires dismissal of both Counts One and Two of Plaintiffs' complaint. The fact that the Sculpture as currently situated constitutes government speech both shows that no free-standing First Amendment violation has occurred and undermines Plaintiffs' retaliation claim.

Finally, Plaintiffs have not asked for injunctive relief with respect to their § 106A claim and, even if they had, their claim would fail. Plaintiffs' request for injunctive and declaratory relief, and their prayer for relief itself focuses only on their constitutional claims—and makes no mention of their statutory ones. *See* Complaint ¶¶ 74-75, 77 and Prayer for Relief (1) and (2). But even if Plaintiffs had sought such relief, the facts alleged in the Complaint fail to establish a violation of § 106A.

## II.    STATEMENT OF THE CASE

Cleveland State University ("the University") agreed to provide a home on its campus for Billie Lawless's sculpture The Politician: A Toy ("the Sculpture"). The Sculpture had previously been located on private property, Complaint ¶ 22, but in 2008 and 2009 it was relocated to land owned and controlled by the University, Complaint ¶¶ 31-33. The University agreed to pay Lawless a yearly rent of $120 and for the Sculpture's ongoing maintenance and upkeep. Complaint ¶¶ 25 and 28.

In late 2018, Lawless modified the sculpture. Complaint ¶ 47. He added a phrase that the University found objectionable. The University therefore covered Lawless's addition with a white banner. Complaint ¶ 48. After discussions with Lawless seeking to have him remove the newly-added phrase were unsuccessful, the University exercised its right under the contract to terminate the Sculpture contract for any reason. Complaint ¶ 52.

In response, Plaintiffs filed a lawsuit asserting violations of their First Amendment rights, Complaint ¶¶ 53-55 and 56-59, of the contract governing the Sculpture's placement on

2

University property, Complaint ¶¶ 67-70, and of 17 U.S.C. § 106A, the Visual Artists Rights Act, Complaint ¶¶ 60-63 and 64-66.

## III.    ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), a complaint can be dismissed "for lack of subject matter jurisdiction" or for a failure "to state a claim upon which relief can be granted." When faced with a motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The court does not need to accept legal conclusions as true, however, even when they are couched as factual allegations. *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956).

In this case none of Plaintiffs' claims has merit and their complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b). In Count One of their Complaint Plaintiffs seek to enforce their contract with the University. And Plaintiffs appear to seek damages against the University and its employees with respect to each of the Complaint's five counts. *See* Complaint, Prayer for Relief (4). But both their contract claim and their damages claims must be dismissed under Fed. R. Civ. P. 12(b)(1) because the Court lacks jurisdiction to hear those claims. Plaintiffs also seek injunctive relief, but only with respect to Counts One and Two of their complaint. *See* Complaint ¶¶ 74-75, 77 and Prayer for Relief (1) and (2). To the extent that they seek such relief, however, dismissal of those claims is appropriate under Fed. R. Civ. P. 12(b)(6). Even after Plaintiffs' Complaint is construed in their favor, the Complaint still fails to state a claim upon which injunctive relief can be granted.

### A.     Plaintiffs' contract and damages claims against the University or its employees acting in an official capacity are barred by sovereign immunity.

It is black-letter law that the Eleventh Amendment protects unconsenting States and their agents or instrumentalities from being subject to suit for money damages in federal court. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *see also Hans v. Louisiana*, 134 U.S. 1, 13 (1890). The protection from suit afforded by the Eleventh Amendment extends to complaints filed under 42 U.S.C. § 1983. *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001) (en banc).

The University and its officials are entitled to the benefit of sovereign immunity in this case. There can be no dispute that the University is an arm of the State of Ohio. *See McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) ("[A] public university qualifies as an arm of the state."); *see also Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). And while a State may choose to waive sovereign immunity, *see Doe v. Dewine*, 910 F.3d 842, 848 (6th Cir. 2018), or Congress may in some instances validly abrogate it, *see Seminole Tribe v. Fla.*, 517 U.S. 44, 55 (1996), neither has occurred here. Plaintiffs' claims for damages against the University and its employees acting in an official capacity must therefore be dismissed.

### 1.     The Court must dismiss Plaintiffs' state-law contract claim because the State of Ohio has waived sovereign immunity only for claims that are brought in the Ohio Court of Claims.

The Court lacks jurisdiction over Plaintiffs' contract claim. Plaintiffs' state-law claim against the University is barred by sovereign immunity and the Court lacks subject matter jurisdiction over that claim.

Section 16, Article I of the Ohio Constitution provides that "suits may be brought against the state, in such courts and in such manner as may be provided by law." In 1975, consistent with this provision, the General Assembly codified the State's waiver of sovereign immunity, but only

4

consented to "have its liability determined in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties …." Ohio Rev. Code § 2743.02(A)(1). The Revised Code then states, specifically, that "[t]he court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code…." Ohio Rev. Code § 2743.03(A)(1).

The Ohio Supreme Court has interpreted Ohio Rev. Code § 2743.02 to require that claims for damages resulting from a contract dispute be brought in the Ohio Court of Claims. *Cristino v. Ohio Bureau of Workers' Comp.*, 886 N.E.2d 857, 860 (Ohio 2008); *see also Measles v. Indus. Comm'n of Ohio*, 946 N.E.2d 204, 206-07 (Ohio 2011). And the Sixth Circuit has accordingly held that federal courts may not consider such claims. *See Agrawal v. Montemagno*, 574 Fed. App'x 570, 573 (6th Cir. 2014) (holding that district court properly dismissed state-law contract claim). When a state has not waived its immunity, a federal court is barred from hearing a state-law claim even when the court would otherwise have had supplemental jurisdiction to hear that claim. *See McNeilus Truck & Mfg., Inc. v. State ex rel. Montgomery*, 226 F.3d 429, 438-39 (6th Cir. 2000) (*applying Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)). That bar applies "regardless of whether monetary relief is sought." *Ernst v. Rising*, 427 F.3d 351, 365 (6th Cir. 2005) (en banc) (*citing Pennhurst*, 465 U.S. at 102).

Controlling law therefore dictates that Court Five of the complaint, asserting a state-law contract claim, must be dismissed. In their Complaint, Plaintiffs seek damages against the University. *See* Prayer for Relief at (4). As a result, only the Ohio Court of Claims has jurisdiction to consider Plaintiffs' breach of contract claim against the University.

    **2.  The Court must dismiss Plaintiffs' damages claims against the University or its employees acting in an official capacity because Congress has not abrogated the State's sovereign immunity.**

Congress has a limited power to subject States to suit in federal court even when they have not waived their immunity. But if Congress wishes to abrogate state sovereign immunity it must "unequivocally express[]" its intent to do so and it must act "pursuant to a valid exercise of power." *Seminole Tribe*, 517 U.S. at 55 (quotation and citation omitted). Congress may not abrogate state sovereign immunity under Article I of the United States Constitution. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 637 (1999). And while the Fourteenth Amendment does give Congress the power to abrogate sovereign immunity, it may do so only as a remedial matter. *Id.* at 638. That is, before it may abrogate sovereign immunity under the Fourteenth Amendment, Congress must identify "a history of 'widespread and persisting deprivation of constitutional rights.'" *Id.* at 645 (*quoting City of Boerne v. Flores*, 521 U.S. 507, 526 (1997).

In this case, Congress has either (1) not abrogated the States' sovereign immunity or (2) not done so in a valid manner. With respect to Plaintiffs' First Amendment claims, Congress made no attempt to subject the State to suit. Nothing more needs to be said with respect to those claims; the Court is without jurisdiction to hear them and they must be dismissed.

And while Congress attempted to abrogate the States' sovereign immunity for purposes of the Copyright Act, of which § 106A is a part, *see* 17 U.S.C. § 511, its attempt was invalid. The Sixth Circuit has yet to address the issue, but every federal appellate court to have done so has held that Congress did not validly exercise its Fourteenth Amendment power when it adopted § 511. *See Allen v. Cooper*, 895 F.3d 337, 349-54 (4th Cir. 2018); *Chavez v. Are Publico Press*, 204 F.3d 601, 607-08 (5th Cir 2000); *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*, 633 F.3d

6

749, 1315 (11th Cir 2008). Numerous district courts have reached a similar conclusion. *Romero v. Cal. DOT*, No. CV 08-8047, 2009 U.S. Dist. LEXIS 23193, *7-13 (C.D. Cal. Mar. 12, 2009) (dismissing § 106A claim because Congress did not validly abrogate sovereign immunity); *Reiner v. Canale*, 301 F. Supp. 3d 727, 746-49 (E.D. Mich. 2018); *Campinha-Bacote v. Regents of the Univ. of Mich.*, No. 1:15-cv-330, 2016 U.S. Dist. LEXIS 5958, *3 (S.D. Ohio Jan. 19, 2016); *see also Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1007-08 (D. Minn. 2014) (collecting cases).

Plaintiffs' Complaint contains no allegations that would lead this Court to reach a different conclusion. Among other things, the Complaint does not allege that states have a history and pattern of infringing on artists' statutory rights nor does it identify a "pattern of constitutional violations" on the part of the state. *See Florida Prepaid*, 527 U.S. at 639-40. Thus, to the extent that Counts Three and Four of Plaintiffs' Complaint allege violations of 17 U.S.C. § 106A and seek damages against the University or its employees acting in their official capacity, those claims are barred by sovereign immunity and must be dismissed. (Further supporting dismissal of at least Count Four of Plaintiffs' compliant is the fact that the "[Visual Artists Rights Act] does not provide a damages remedy for an attribution violation." *Mass. Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38, 55 (1st Cir. 2010)).

> **B.     The Court must dismiss Plaintiffs' damages claims against the unidentified University employees acting in their individual capacity because those claims are barred by qualified immunity.**

To the extent that Plaintiffs seek damages against certain unidentified University employees acting in their individual capacity, those claims too must fail. Public employees performing their official duties are entitled to qualified immunity from damages suits in order "to shield them from undue interference with their duties and from potentially disabling threats of

liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Employees are entitled to immunity as long as their conduct was objectively reasonable. The reasonableness of that conduct is "measured by reference to clearly established law" at the time. *Id.* at 818; *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Before a claim can be brought, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id* at 639. That is, "in light of the pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "[T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Importantly, qualified immunity provides "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In this case, there was not *any* violation of the law, let alone one that was clearly established. To begin with, Plaintiff's First Amendment claims are easily dispatched. As is discussed in greater detail below, "the placement of a permanent monument in a public park is best viewed as a form of government speech." *Summum*, 555 U.S. at 464. Therefore, because this case involves public speech and not private speech, no First Amendment violation has occurred. But even if the Court were to have doubts about the application of *Summum*'s rule to the facts of this case, Defendants are still entitled to the benefit of qualified immunity. In light of the Supreme Court's *Summum* decision, it cannot be said that it is *clearly established* that a governmental entity violates the First Amendment when it chooses to obscure a portion of a sculpture or monument that sits on public land and is paid for with public funds. That is all that the Court need decide for purposes of qualified immunity. *See Pearson*, 555 U.S. at 236 (qualified immunity applies if the law was not clearly established).

Defendants are similarly entitled to qualified immunity with respect to Plaintiffs' § 106A claims. As with the First Amendment, no violation of that statute has occurred. Although §106A(a)(3)(A) prohibits "any intentional distortion, mutilation, or other modification" of a work that would be prejudicial to an artist's honor or reputation, the University did not violate that provision for at least two reasons. *First*, § 106A(c)(2) explicitly states that the modification "of a work of visual art which is the result . . . of the public presentation . . . of the work," does not violate the statute unless the modification is caused by gross negligence. *See* 17 U.S.C. § 106A(c)(2). At least one court has relied on § 106(A)(c) to conclude that an artist has no right to the public presentation of his or her work. *Phillips v. Pembroke Real Estate, Inc.*, 288 F. Supp. 2d 89, 100 (D. Mass. 2003) (affirmed on other grounds by *Phillips v. Pembroke Real Estate, Inc.*, 459 F.3d 128 (1st Cir. 2006)). *Second*, the University's decision to cover Lawless's recent addition to the Sculpture does not constitute an impermissible modification under § 106A(a)(3)(A). At least one court has held that partially covering a work of art with tarpaulins could not "reasonably be deemed an intentional act of distortion or modification" of the artist's work. *Buchel*, 593 F.3d at 61. That court found it unnecessary to rely on § 106A(c)(2)'s public presentation exception. The plain language of § 106A, and the decisions interpreting it, therefore show that the University has not violated § 106A(a)(3)(A).

But, as with Plaintiffs' First Amendment Claims, even if the Court has questions about whether the facts alleged in the Complaint could constitute a violation of §106A, the law governing such claims is not so clearly established as to deprive University officials of qualified immunity. There are few decisions interpreting or applying the provisions of § 106A and, as discussed above, several of those decisions found that no violation of the occurred when a work of art was either moved or obscured. Whether or not those decisions are correct, they at a

minimum show that covering or otherwise obscuring a sculpture that sits on publicly owned land does not clearly violate the terms of the statute. Defendants are therefore entitled to qualified immunity and Plaintiffs' claims for damages against them must be dismissed.

     **C.**    **Plaintiffs are not entitled to the injunctive relief because the Complaint fails to establish that any violation of the Plaintiffs' First Amendment rights has occurred.**

Although the Court has jurisdiction to hear Plaintiffs' claims for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), those claims fail for a different reason: Even construing the Complaint in a light most favorable to the Plaintiffs, it fails to state a claim upon which relief can be granted. Plaintiffs' claims for injunctive relieve must be dismissed as well.

     **4.**    **Plaintiffs are not entitled to injunctive relief on Count One of the Complaint because the display of a sculpture on public property constitutes public speech.**

It is settled law that "the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Summum*, 555 U.S. at 464. The First Amendment permits the government to decide which monuments it will place on public property; it does not require the government to communicate a private message with which it disagrees. *See Walker v. Tex. Div, Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2253 (2015); *see also Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995) ("[W]hen the State is the speaker, it may make content-based choices"). The government does not run afoul of the First Amendment if it declines to convey a message it believes the general public may find offensive or, for that matter, if it simply does not want to be associated with the message. *See id.* at 2245. Finally, the First Amendment analysis does not change if the government purchases a sculpture or hires someone to construct a monument. A monument remains government speech even when the government

10

"receives assistance from private sources for the purpose of delivering" that message. *Id.* at 468; *see also Rosenberger*, 515 U.S. at 833.

These First Amendment principles establish that the University did not violate the Plaintiffs' constitutional rights when it decided to obscure Lawless's recent modifications to the Sculpture. Even construed in a manner most favorable to the Plaintiffs, the Complaint demonstrates that the Sculpture (at least in its current form and location) constitutes government, not private, speech. Among other things, the Complaint specifically alleges that the Sculpture sits upon government-owned land. Complaint at ¶ 31 (sculpture was relocated "to Cleveland State University's property"). And it further alleges that the University expends its own funds to support the Sculpture, both by paying rent for it, Complaint at ¶ 25, and by paying for its maintenance and upkeep, Complaint at ¶ 28. Rather than supporting Plaintiffs' First Amendment Claim, these facts show that the claim must instead be dismissed.

Lawless's belief that the Sculpture remains a "work in progress," Complaint ¶ 19, and the fact that Lawless has previously modified the Sculpture without any objection from the University, *see* Complaint ¶¶ 37-40, does not change the fact that the Sculpture constitutes government speech, not private speech. Just like a private party, a governmental entity is free to determine which messages it seeks to express. *Walker*, 135 S. Ct. at 2253. That the University has in the past been willing to endorse, or at least tolerate Lawless's changes to the Sculpture, does not change the fact that, as a result of the most *recent* modifications, the Sculpture no longer conveys a message that the University wishes to communicate.

The University's willingness to tolerate past changes to the Sculpture, (and its decision to abandon its plans for a garden surrounding the Sculpture, *see* Complaint ¶ 40) also did not transform the sculpture into a public forum. "The government does not create a public forum by

11

inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985). One consideration when determining whether a public forum exists is "the nature of the property and its compatibility with expressive activity." *Id.* But when it comes to monuments or sculptures, the Supreme Court has already answered the compatibility question. It has held that "public forum principles are out of place in the context of" public monuments. *See Summum*, 555 U.S. at 478 (quotation and citation omitted). And in doing so it noted that public parks can accommodate only a number of permanent monuments and that "one would be hard pressed to find a 'long tradition' of allowing people to permanently occupy public space with any manner of monuments." *Id.* at 478-79 (quotation and citation omitted).

Nor can it be said that the University has created a limited public forum for the benefit of the Plaintiffs. When a governmental entity chooses to accept a monument or sculpture, it "does not necessarily endorse the specific meaning that any particular donor sees in the monument." *Id.* at 476-77. After all, it is "not common for property owners to open up their property for the installation of permanent monuments that convey a message with which they do not wish to be associated." *Summum*, 555 U.S. at 470-71. That is particularly true in this case where the University only agreed to accept the Sculpture as it existed in 2008. And while the University has contracted with Lawless to *maintain* the Sculpture, there is nothing in the contract governing the Sculpture's placement that permits Lawless to *modify* it. The University's silence in the face of past modifications should not be construed to indicate assent to future modifications, including but not limited to the one at issue here. The contract confirms this; it states that the failure to enforce any rights under the contract does not wave those rights. *See* Contract ¶ 27. For

these same reasons, the fact that Lawless retains title to the Sculpture, *see* Complaint ¶ 26, has no effect on the First Amendment analysis.

> **5.  Plaintiffs are not entitled to injunctive relief on Count Two of the Complaint because it fails to establish that the University impermissibly took action against Plaintiffs for speaking in their roles as public citizens.**

It is undisputed that Lawless is not a government employee. But at least for purposes of this case, that does not matter. The University contracted with Lawless for the display and upkeep of the Sculpture. The same basic legal principles govern First Amendment retaliation claims regardless of whether they are brought by government contractors or by government employees. "Independent government contractors are similar in most relevant respects to government employees, although both the speaker's and the government's interests are typically—though not always—somewhat less strong in the independent contractor case." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 688, 684 (1996). Significantly, the *Umbehr* court did not find a violation of the First Amendment. It instead remanded so that a lower court could determine in the first instance whether Umbehr's contract was terminated because of his private speech on a matter of public concern. *See id.* at 685. Here, that inquiry is simple. Because this case involves government speech, not private speech, Plaintiffs' retaliation claim must be dismissed.

The first question when confronted with a retaliation claim is whether a public employee "spoke as a *citizen* on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (emphasis added). If the answer is no, then any First Amendment inquiry is at an end. *Id.* Any adverse action that is taken because of speech made in an official or representative capacity does not infringe on whatever rights an individual "might have enjoyed as a public citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned

13

or created." *Id.* at 421-22 (citing *Rosenberger*, 515 U.S. at 833). Put more simply, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421.

Only after determining that an individual was speaking as a private citizen must a court confront the second question: whether the government "had an adequate justification for treating the employee differently from any other member of the general public." *Id.*; *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (balancing state interests against private speech interests of employees). Individuals asserting a First Amendment retaliation claim must show that their speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

Here, the Court's analysis of Plaintiffs' retaliation claim should begin and end with *Garcetti*'s first step. Whether a party engaged in protected speech is a question of law, not fact. *See Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017). But even if it were a mixed question, Plaintiffs' claim would still fail; as discussed above, after construing the Complaint in a manner most favorable to Plaintiffs, the only conclusion that can be reached is that the Sculpture, as it is currently situated, is the University's speech. As a result, when Lawless modified the Sculpture, he was not acting as a private citizen. He was speaking on behalf of the University. In that respect, Lawless's modification of the Sculpture is different from other forms of private speech. Lawless did not picket, leaflet, or write a letter to the editor. Nor did he construct a sculpture—or modify it—on private land. Instead, he modified the message of a sculpture that sits on University land and is paid for with University funds. *See* Complaint at ¶¶ 31, 25, and 28.

Even if Lawless was not acting as a representative of the University when he modified the Sculpture, the University's decision to exercise its right to terminate the contract for any

14

reason still does not violate the First Amendment. Under *Pickering* Plaintiffs still must demonstrate that their rights outweigh the rights of the University, which provides a home for the Sculpture and pays for it and for its maintenance. *See Pickering*, 391 U.S. at 568. They have not.

While there is no dispute that Lawless was free to speak publicly as a *general* matter, doing so on University property interfered with the University's interest in controlling its own property and its own speech. If the University is to operate efficiently and effectively it must be able to exercise control over communications that are deemed to be its own expression. *See Garcetti*, 547 U.S. at 419; *see also Pickering*, 391 U.S. 568 (the State has an interest "in promoting the efficiency of the public services it performs through its employees"). Equally important, it must be able to control how its own property is used. To hold otherwise would mean that Lawless would be free to make any modifications to the Sculpture that he wishes and that he could accordingly force the University to convey his own message rather than the message of the University. That is simply something that the First Amendment does not require. *See Garcetti*, 547 U.S. at 422 (First Amendment permits the government to exercise control over that which it has commissioned).

Finally, whether the contract permits Lawless to modify the Sculpture (an open question that is for the Ohio Court of Claims to decide) has no bearing on the constitutionality of the University's decision to terminate the contract. The University has no First Amendment obligation to continue to provide the Sculpture with a home. "Simply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist." *Freedom From Religion Found., Inc. v. City of Warren*, 707 F.3d 686, 695 (6th Cir. 2015).

**6.  Plaintiffs have not sought injunctive relief on the § 106A claims, and would not be entitled to such relief even if they had.**

Plaintiffs' complaint does not seek declaratory or injunctive relief with respect to their § 106A claims. They instead ask only that the Court declare that their First Amendment rights have been violated, Complaint ¶ 74, and assert that they have been injured as a result of that violation, Complaint ¶ 77. Their prayer for relief similarly only seeks a declaration that the University's covering up of Lawless's recent additions to the Sculpture and its decision to terminate the contract are unconstitutional. Complaint, Prayer for Relief (1) and (3). The only injunctive relief that Plaintiffs ask for is an order from the Court prohibiting Defendants "from continuing [their] censorship of the Sculpture." Nowhere does the Complaint ask for injunctive relief related to § 106A. Counts Three and Four of the Complaint must therefore be dismissed.

Even if Plaintiffs had requested injunctive relief with respect to their § 106A claims, the Complaint would still fail to state a claim upon which relief can be granted. No violation of that statute has occurred. The integrity provision of § 106A prohibits any "intentional distortion, mutilation, or other modification of [an artwork] which would be prejudicial to [the artist's] honor or reputation." 17 U.S.C. § 106A(a)(3)(A). Explicitly excluded from that prohibition, however, is any "modification of a work of visual art which is the result . . . of the public presentation . . . of the work." 17 U.S.C. § 106A(c)(2).

The University did not violate the integrity provision of § 106A(a)(3)(A) when it used a temporary banner to cover up the phrase that Lawless recently added to the Sculpture. In at least one instance, a court has found that the mere act of using a tarpaulin to cover up a work of art does not constitute an impermissible modification under the statute. *Buchel*, 593 F.3d at 61. But even if the Court were to conclude based on the facts of this case that the University *did* modify the Sculpture when it affixed the banner, that modification was permissible under the public-

16

presentation exception found in § 106A(c)(2). The Committee Report discussing § 106A supports this reading. The Committee members believed that the public-presentation exclusion would, for example, permit a property owner to temporarily add ribbons to a sculpture of geese in flight—even over the artist's objection. *See* H.R. Rep. No. 101-514, at 17 (1990). If the Court were to hold otherwise, it would require it to conclude that § 160A requires a property owner to continue to display and provide a home for a work of art, even when that property owner no longer wishes to do so. At least one court has rejected such an interpretation. *Phillips*, 288 F. Supp. 2d at 100 (affirmed on other grounds by *Phillips*, 459 F.3d 128); *cf. also English v. BFC&R E. 11th St. LLC*, No. 97 Civ. 7446, 1997 U.S. Dist. LEXIS 19137, *14 (S.D.N.Y. Dec. 2, 1997).

## IV.    CONCLUSION

The Court should dismiss the Complaint in its entirety because Plaintiffs' claims for damages are barred by sovereign immunity and qualified immunity, and because Plaintiffs' claims for injunctive relief fail to state a claim upon which relief can be granted.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*s/ Amy Nash Golian*
_____

AMY NASH GOLIAN (0039306)
*Trial Counsel*
ASHLEY A. BARBONE (0083666)
Assistant Attorneys General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Telephone:  (614) 644-7250
Facsimile:  (614) 644-7634
amy.golian@ohioattorneygeneral.gov
ashley.barbone@ohioattorneygeneral.gov
*Counsel for Defendants*

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that this case has not been assigned to a track and that it does not exceed the limit of 20 pages as imposed by Local Rule 7.1(f).

*s/ Amy Nash Golian*

———————————————————————

AMY NASH GOLIAN (0039306)
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on February 7, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's systems.

*s/ Amy Nash Golian*

———————————————————————

AMY NASH GOLIAN (0039306)
Assistant Attorney General